IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALINA TAMAS, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 11 C 1024 |
| v. | ) ) | Judge John Z. Lee |
| FAMILY VIDEO MOVIE CLUB, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Family Video Movie Club, Inc. ("Family Video") moves for summary judgment as to the claims brought by Plaintiff Alina Tamas ("Tamas") alleging that Family Video has violated the Fair Labor Standards Act ("FLSA") by wrongfully classifying Tamas (and those employees of Family Video who are similarly situated) as exempt employees. Tamas responds that genuine issues of material fact exist as to the nature of her position and preclude the Court from granting summary judgment in favor of Family Video. For the reasons set forth below, Family Video's motion is denied.

**Facts**

**I.    Undisputed Material Facts**

The following facts are undisputed. Family Video is a privately owned movie and video game retailer with hundreds of individual retail stores in more than 18 states. (Def.'s Local Rule 56.1(a)(3) Statement of Undisputed Facts ("Def.'s LR 56.1(a)(3)") ¶ 1.)  Tamas was formerly employed as a "MIT," or "Manager-in-Training" at Family

Video in 2010.[1] (*Id.* ¶¶ 2, 5.) Tamas began training with various store managers, her district manager, and her regional director to become a store manager in April 2010. (*Id.* ¶ 6.) When Tamas received her first paycheck, she realized that she was considered an hourly employee rather than a salaried employee. (*Id.* ¶ 7.) When Tamas asked her district manager and regional director whether she could be paid a salary, she was told that she would be paid a salary once she successfully completed a Salary Approval Evaluation. (*Id.*)

As of June 7, 2010, Tamas had been trained on all of the tasks identified in the MIT Salary Approval Evaluation, which she verified in writing. (*Id.* ¶¶ 11, 13.) The district manager recommended to the regional director that Tamas be promoted from an hourly MIT to a salaried MIT. (*Id.* ¶ 14.) The regional manager certified that she was ready and eligible to be promoted to a salaried MIT. (*Id.* ¶ 15.) Tamas became a salaried MIT at the Family Video locations in Mundelein, IL and Round Lake, IL. (*Id.* ¶¶ 17, 18.) As a salaried MIT, Tamas was the highest-ranked person at her stores when there was no district manager or store manager ("SM") present on site. (*Id.* ¶¶ 19, 20.)

As a MIT, it is undisputed that Tamas was involved in interviewing job applicants and could make suggestions as to hiring, firing, promotion, demotion and change in employment status of the employees at her stores. (*Id.* ¶¶ 28, 29.) Tamas made two recommendations for hire, both of whom were hired by Family Video. (*Id.* ¶ 30.) Tamas made one recommendation for promotion, and that person was promoted to assistant manager. (*Id.* ¶31.) She also conducted personnel reviews of her employees. (*Id.* ¶ 40.) Tamas coached and trained employees as directed. (*Id.* ¶ 42.) Tamas handled customer

---

[1] The parties dispute whether Tamas initially was offered an hourly or salaried position. (Pl.'s Resp. to Def.'s LR 56.1(a)(3) ¶¶ 5, 7.)

complaints. (*Id.* ¶ 46.) As a salaried MIT, Tamas received at least $455 per week in salary. (*Id.* ¶ 76.)

On October 25, 2010, Tamas was recommended for a "medium volume store manager position" or a "low volume store manager position." (*Id.* ¶ 77.) However, Tamas resigned as a salaried MIT on November 1, 2010. (*Id.* ¶ 78.) She continued working at Family Video as a part-time customer service representative until April 2011. (*Id.* ¶ 79.)

## II.  Material Facts In Dispute

There is a fundamental dispute, at the heart of this case, as to the nature of the duties Tamas performed as a salaried MIT and the amount of time she spent doing them.

For its part, Family Video offers the Declaration of Jim Burda, a Regional Director, who avers, in relevant part, that "[o]nce an employee becomes a salaried MIT, the employee is expected to be in charge of the store, run the store as though the employee was the owner, and perform all of the duties that are expected of a Store Manager . . . ." (Def.'s LR 56.1(a)(3), Ex. 2, ¶ 5.) Family Video further relies upon the job description for a SM contained in the Family Video Employee Handbook, which describes the tasks that SMs and MITs were expected to perform. (*Id.* ¶ 27; Ex. 5 thereto at 9-10.) For example, Family Video's Employee Handbook states that MITs are "trained to become proficient in all functions of the Store Manager." (*Id.*, Ex. 5 at 10.)

Tamas, in contrast, steadfastly denies that she served in a managerial capacity and provides exhaustive lists of non-managerial tasks that she actually performed. (*See*, *e.g.*, Pl.'s Resp. to Def.'s LR 56.1(a)(3) ¶ 4.) Tamas asserts that while she may have been trained to perform certain managerial tasks in theory, she did not necessarily perform

3

them in practice. (*Id.* ¶ 3.) Tamas also points out that Family Video's training manual (the "Star Binder") also assigned numerous non-managerial tasks to MITs. (*Id.* ¶ 9.) Furthermore, according to Tamas, "SMs and MITs perform uniform janitorial functions" including sweeping, trash removal and snow removal. (Pl.'s LR 56.1(b)(3)(C) ¶ 28.) Finally, Tamas alleges that she either lacked authority to perform managerial tasks unless directed by Family Video management or only did so pursuant to Family Video policies that did not allow her to exercise discretion. (*See*, *e.g.*, *id.* ¶¶ 2, 22, 23, 25, 26.)

As a result, there are numerous material facts in dispute, including but not limited to: (1) whether Tamas made certain decisions at her stores without approval from her managers, including but not limited to setting sales goals and making schedules (Pl.'s Resp. to Def.'s LR 56.1(a)(3) ¶¶ 33, 34); (2) whether Tamas was "in charge of" her store (*id.* ¶ 21); (3) how many employees Tamas supervised at any given time and how many hours those employees worked (*id.* ¶¶ 23, 24); (4) how much Tamas was paid as a salaried MIT at each store compared with the hourly employees at those stores (*id.* ¶¶ 25, 26); and (5) whether Tamas was permitted to fire employees at her stores. (*Id.* ¶ 32.)

## Discussion

### I. Summary Judgment Standard

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmoving party must then set forth specific facts demonstrating that there are

4

disputed material facts that must be decided at trial. *Id.* at 321-22. The Court must take the evidence in the light most favorable to the non-movant and draw all justifiable inferences in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**II.     Fair Labor Standards Act**

The FLSA provides that employees must receive overtime pay if they work more than 40 hours in a given work week. 29 U.S.C. § 207(a)(1). However, "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from this requirement. 29 U.S.C. § 213(a)(1). The burden falls to the employer to establish that an exemption applies. *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 571 (7th Cir. 2012). The Court is obligated to construe exemptions narrowly against the employer. *Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207 (1959). Here, Family Video contends that the executive and/or administrative exemptions apply to Tamas in her role as a MIT, and that she was properly classified as an exempt employee. Not surprisingly, Tamas disagrees.

The DOL has promulgated regulations that set forth numerous factors for the Court to consider in determining whether an exemption applies to a particular employee. *See* 29 C.F.R. § 541.100 (2004) (General rule for executive employees); 29 C.F.R. § 541.200 (2004) (General rule for administrative employees); 29 C.F.R. § 541.708 (2004) (Combination exemptions). These regulations, and the cases interpreting them, provide a roadmap for the Court to evaluate Defendant's motion.

For an employee to be classified as exempt under the executive exemption, the following requirements must be met:

    (1)    the employee is paid a salary of $455 or more per week;

    (2)    the employee's "primary duty" is management;

    (3)    the employee's job includes customary and regular direction of at least two other employees; and

    (4)    the employee may either hire or fire other employees or her suggestions regarding hiring and firing of other employees are accorded "particular weight."

29 C.F.R. § 541.100 (2004).

For the administrative exemption to apply, employees must:

    (1)    be paid a salary of $455 or more per week[2];

    (2)    have as their "primary duty the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and

    (3)    their primary duty must include "the exercise of discretion and independent judgment with respect to matters of significance."

29 C.F.R. § 541.200(a) (2004).

Finally, pursuant to the regulation commonly referred to as the "combination exemption":

> [e]mployees who perform a combination of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees may qualify for exemption. Thus, for example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption. In other words, work that is exempt under one section of this part will not defeat the exemption under any other section.

29 C.F.R. § 541.708 (2004).

As reflected in these regulations, in determining whether these exemptions apply, the Court must first decide what tasks, duties and responsibilities fall within the

---

[2] The parties agree that Tamas earned a salary of $455 or more per week, and thus, the first factor under both the executive and administrative exemptions is satisfied.

6

employee's "primary duty." The DOL provides the following definition of "primary duty" and a non-inclusive four-factor test to assist in this analysis:

> The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.[3]

29 C.F.R. § 541.700(a) (2004).

### A. Tamas' Primary Duty as a MIT

"The primary duty component is a necessary, but not sufficient, part of each test" to determine whether the executive, administrative, and combination exemptions apply. *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 827 n.2 (10th Cir. 2012); *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 633 (7th Cir. 2010). If there is a genuine dispute of fact as to the nature and scope of Tamas' primary duty, summary judgment must be denied.

Courts must bear in mind that "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). This regulation

---

[3] Prior to 2004, 29 C.F.R. § 541.700(a) included five factors rather than four. Family Video curiously argues the five-factor test in their motion (relying upon *In re Family Dollar FLSA Litig.*, 637 F.3d 508, 513 (4th Cir. 2011), but the Court notes that the *Family Dollar* case expressly applied the pre-2004 regulations given that the claims at issue arose, in part, during a time period pre-dating the 2004 amendments. Here, the claims arose after 2004 and, thus, the four-factor test applies. (*See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1266-69 (11th Cir. 2008) for a thorough discussion of the changes the 2004 amendments made to the pre-2004 test.)

further features specific guidance with respect to "assistant managers in a retail establishment" similar to Tamas:

> [F]or example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700(c). Bearing the foregoing in mind, the Court addresses the four factors set forth in 29 C.F.R. § 541.700(a).[4]

### 1. Relative Importance of Exempt Duties

The first factor, the relative importance of exempt duties, is analyzed from the employer's perspective. *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990); *see also Pierce v. Dolgencorp, Inc.*, Nos. 3:09cv079, 4:09cv097, 2011 WL 398366, at *8 (M.D. Pa. Feb. 3, 2011). As noted in *Ely v. Dolgencorp, LLC*, 827 F. Supp. 2d 872, 886 (E.D. Ark. 2011) (collecting cases), numerous courts have found "this intensive fact-based inquiry is inappropriate for summary judgment." In *Ely*, for example, the court recognized that the plaintiff's "managerial role was central in the efficient running of his store," and that he performed many tasks that were "enumerated in the regulations," including recruiting employees, supervising their work, and making recommendations regarding hiring and firing. *Id.* at 887. However, the court found that a genuine dispute of fact precluded summary judgment on this point because "nearly all of Ely's roles were subordinate to or preempted by the pervasive governance of the district manager and

---

[4] Although the parties cite to a number of different decisions applying the FLSA, given the fact-intensive nature of the inquiry, the Court focuses on decisions involving facts that are closely analogous to this case whenever possible.

corporate headquarters." *Id.* Moreover, "Ely's nonmanagerial duties were essential," as "this record indicates that the store could not have run without the hours of manual labor demanded of Plaintiff." *Id.*

Here, there is a stark dispute between what Family Video contends were Tamas' "managerial" duties and what duties Tamas contends she actually performed. According to Family Video, Tamas "admitted that her managerial duties . . . were much more important than the non-managerial tasks she chose to perform . . . ." (Def.'s Mem. 15.) But Tamas counters that there is a genuine dispute as to whether the duties Family Video cites were actually "managerial" in the first place, and that she performed far more tasks that were non-managerial than managerial in nature. (Pl.'s Resp. 4-5, 10.) Moreover, the record is unclear as to how much autonomy Tamas had in her role as a MIT. (*See*, *e.g.*, Pl.'s Resp. to Def.'s LR 56.1(a)(3) ¶¶ 2, 22, 23, 25, 26.)

In addition to the presence of these factual disputes, the record is very sparse as to how important Family Video considered Tamar's "managerial" tasks to be. Although Family Video argues that "Tamas's managerial duties were much more important to Family Video's success than her non-managerial tasks because Family Video could not operate if the management duties were not completed," (Def.'s Mem. 16.), it does not cite to any facts in the record to support this conclusory statement. Instead, it elects to rely upon *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 505 (6th Cir. 2007). That case, however, is readily distinguishable.

In *Thomas*, the defendant presented undisputed facts that it considered the employee's managerial duties to be more important that her non-managerial duties. From this, the court found that the plaintiff's managerial duties were "much more important to

9

Speedway's success than her non-managerial duties." *Id.* No such undisputed facts are presented here. In fact, although the Court is not obligated to do so, it combed the record for such evidence,[5] finding only a passing statement in the Declaration of Jim Burda. (Def.'s LR 56.1(a)(3), Ex. 2.), where, he asserts that "the management duties that Ms. Tamas performed were the most important duties that were expected of and in fact were performed by Ms. Tamas. If she has not performed these duties her stores would have failed." (*Id.* ¶ 17.) But, Burda fails to provide any basis for this statement or his knowledge. Such a conclusory statement, without more, is insufficient to meet Family Video's burden to prevail at this stage.

The recent case of *Costello v. Home Depot USA, Inc.*, No. 3:11-cv-953, 2013 WL 837586, at *20 (D. Conn. Mar. 5, 2013), is illustrative. There, the FLSA plaintiffs were assistant store managers at Home Depot. In analyzing the employee's "primary duty" in the context of the executive exemption, the court found that the disputed facts precluded summary judgment at to this issue:

> [G]iven the absence of corroborating testimony from Home Depot officials or other employees regarding the importance of Costello's various tasks, divergent accounts of the amount of time actually spent on managerial tasks (including performance of MOD functions), the degree to which those functions were replicated by lower-level employees, Costello's testimony that he was informed by supervisors that customer service was his primary job function, and his somewhat uncertain degree of influence in hiring decisions, a material issue of fact remains as to the relative importance of Costello's managerial functions.

*Id.*

---

[5] As the Seventh Circuit has repeatedly held, "compelling the court to take up a burdensome and fruitless scavenger hunt for arguments is a drain on its time and resources. 'Judges are not like pigs, hunting for truffles buried in briefs.'" *Ehrhart v. Secretary of Health and Human Servs.*, 969 F.2d 534, 537 (7th Cir. 1992), quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam).

Similarly, here, Family Video fails to put forth sufficient evidence of the relative importance of the managerial tasks performed by Tamar to satisfy its burden on summary judgment. The Court cannot simply rely upon an unsupported assertion that the exempt duties that Tamas allegedly performed were more or less important than her non-managerial duties, particularly where Tamas offers evidence that she spent substantial time performing non-managerial duties. *See McKinney v. United Stor-All Ctrs., LLC*, 656 F. Supp. 2d 114, 124 (D.D.C. 2009) (defendants failed to demonstrate the facilities "would have ceased to function" if plaintiffs failed to perform their managerial tasks for purposes of summary judgment). "This obvious dispute of fact precludes proper analysis," and weighs against the application of the exemptions. *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 291-92 (E.D.N.Y. 2010), citing *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 912 (E.D. La. 2009) (summary judgment not appropriate where dispute of fact existed as to relative import of assistant store manager duties).

### 2. Amount of Time Spent Performing Exempt Work

The second factor, the amount of time Tamas spent performing exempt tasks, also precludes summary judgment. "How employees divide their time between exempt and nonexempt work is a question of fact." *Ely*, 827 F. Supp. 2d at 882, citing *Reich v. Avoca Motel Corp.*, 82 F.3d 238, 240 (8th Cir. 1996). Family Video argues that Tamas was "continuously performing management duties" at all times that she was at work because she was "in charge" of her store. (Def.'s Mem. 14.) Tamas counters that the record demonstrates that "she spent the majority of her time performing non-exempt and non-managerial tasks that were performed by the hourly employees and were identified on

Defendant's store ticker." (Pl.'s Resp. 9.) Tamas further points out that Defendant offers no evidence as to how much time she actually spent on managerial and non-managerial tasks. (*Id.*)

Although 29 C.F.R. § 541.700(b) provides that "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement," there is no hard and fast rule as to the percentage of time required to establish that an employee's primary duty was management. As Tamas points out, Family Video relies on the list of responsibilities in its corporate documents rather than providing actual data to support the proposition that Tamas spent more than 50% of her time on managerial tasks. (Def.'s Mem. 9.) Tamas, by contrast, points to a list of non-managerial tasks that she testified she actually performed. (*See*, *e.g.*, Pl.'s Resp. to Def.'s LR 56.1(a)(3) ¶ 4.)

Again, the Court concludes that the genuine dispute regarding this issue coupled with Family Video's failure to cite facts in the record supporting its position tilts this factor in favor of Tamas. *See Morgan*, 551 F.3d at 1270 (jury verdict in plaintiff's favor proper where, in relevant part, defendant's job description provided "that store managers must do the same work as stock clerks and cashiers"); *Jackson v. G-Tane Servs., Inc.*, 56 Fed. Appx. 267, 271 (7th Cir. 2003) (no exemption where "there was unrefuted evidence that such mundane janitorial duties and non-managerial tasks comprised *well over 50%* of Jackson's work hours) (emphasis in original); *Costello*, 2013 WL 837586 at *21 (genuine issue of fact because "neither side has introduced evidence as to whether Costello was capable, given the tasks at hand, of simultaneously performing managerial and non-managerial tasks, something that courts which have found that employees were properly

exempt have relied on when considering a situation in which the majority of an employee's time is spent on non-exempt tasks."); *Ely*, 827 F. Supp. 2d at 882 (because the defendant "offered no alternative division of time and labor, the Court cannot hold that this factor supports Defendant's contention"); *Pierce*, 2011 WL 398366, at *8 (factor favored plaintiff because record unclear "as to whether Pierce spent a majority of her time on managerial duties, and we determine that a reasonable jury could conclude either way.").

Rather than addressing the percentage of time Tamas spent on managerial and non-managerial tasks, Family Video relies upon *In re Family Dollar*, 637 F.3d at 516, for the proposition that, if a store manager concurrently performed management and non-management functions, she was effectively "in charge" of that store at all times. (Def.'s Mem. 14.) But *Family Dollar* is distinguishable. There, the court did hold that "the nature of retail business . . . exempts retail executives from the requirement that the majority of their hours be spent on executive functions." 637 F.3d at 515. But, as the *Ely* court explained, *Family Dollar's* holding was based upon the particular facts of that case, where plaintiff exercised substantial discretion in running her store, whereas there was significant evidence in the record that Ely believed that he had little discretion over the running of his store. *Ely*, 827 F. Supp. 2d at 884-85. This case is analogous to *Ely* because Tamas has presented sufficient evidence that she either lacked the authority to perform managerial tasks without direction from management or only performed such tasks pursuant to corporate policies that precluded any discretion. (Pl.'s LR 56.1(b)(3)(C) ¶¶ 2, 22, 23, 25, 26.) As the Sixth Circuit noted in *Ale v. Tennessee Valley Auth.*, 269 F.3d 680, 691 (6th Cir. 2001), "[t]he words 'in charge' are not a magical

13

incantation that render an employee a *bona fide* executive regardless of his actual duties." *See also Ely*, 827 F. Supp. 2d at 884 ("being 'in charge' may be in title only) (quoting *Jones v. Dolgencorp, Inc.*, 789 F. Supp. 2d 1090, 1104 (N.D. Iowa 2011)). "Absent objective evidence" as to the precise amount of time Tamas spent on nonexempt tasks, this factor precludes summary judgment. *Clougher*, 696 F. Supp. 2d at 292.

### 3. Wages Paid to Other Employees for Kind of Work Performed by Tamas

The third factor requires a comparison between Tamas' wages and those of Family Video's non-exempt employees. 29 C.F.R. § 541.700. The difficulty comes in determining how best to compare an hourly rate to a weekly or monthly salary. In *Thomas*, the case upon which Family Video principally relies, the Sixth Circuit calculated that number by dividing the plaintiff's weekly salary by the number of hours she worked per week to determine her hourly pay rate. 506 F.3d at 508-09; *see also McKinney*, 656 F. Supp. 2d at 125-26 (adopting the *Thomas* method of calculation); *Ely* 827 F. Supp. 2d at 892 (same, collecting cases). Because Thomas earned an hourly rate of $10.44 and her subordinates earned $7.00 per hour, the court held that she was paid approximately 30% more than her subordinates, which demonstrated that she was properly exempt. *Id.*

Instead of using this formula, however, Family Video simply submits the affidavit of Mary E. Buza to support its contention that, for the duration of the time that Tamas was a salaried MIT at Round Lake, she received compensation in the amount of $7,596.87, "while the highest paid hourly employee at that store received compensation totaling $4,565.75, during that same time period." (Def.'s LR 56.1(a)(3) ¶ 25, Ex. 3 ¶ 12.) Similarly, Family Video claims that, for the duration of her time as a salaried MIT at the Mundelein store, Tamas was paid $3,612.34, while the closest, hourly-paid employee

14

was paid $1,349.60 during the same time period. (*Id.* ¶ 26; Ex. C ¶ 13.) Ms. Buza's affidavit, however, fails to provide the basis for these calculations. Nor does the affidavit provide a method by which the amounts can be compared on an hourly or weekly basis.

Tamas, in response, expressly adopts the *Thomas* formula and submits a comparison where she converts her *weekly* salary into an hourly rate. (Pl.'s Resp. 17-19.) Specifically, Tamas calculates that if she worked 40 hours, her hourly rate would be $12.98; at 45 hours, $11.53; at 50 hours, $10.38 and at 55 hours, $9.43. (*Id.* 18.) Buza's affidavit states that the highest paid hourly employee at the Round Lake Store was paid approximately $9.52/hour, and the highest paid hourly employee at the Mundelein store earned approximately $10.19/hour. (Def.'s 56.1(a)(3) Ex. 3 ¶¶ 12, 13.) Applying the method of comparison used in *Thomas* here, *see Morgan*, 551 F.3d at 1257-58; *Clougher*, 696 F. Supp. 2d at 293, the data demonstrates that, once Tamas worked more than 45 hours in a given work week, the difference between her hourly rate and that of the non-exempt employees did not rise to a level that would support summary judgment.

Because consideration of the three factors above weighs against summary judgment, the Court does not reach consideration of the remaining factor (whether Tamas operated with relative freedom from direct supervision). *See Ely,* citing *Anderson v. Dolgencorp of New York, Inc.*, Nos. 1:09-cv-360, 1:09-cv-363, 2011 WL 1770301, at *12 n.7 (N.D.N.Y. May 9, 2011) (where court found three factors presented questions of fact sufficient to preclude summary judgment, no need to consider remaining factor). Summary judgment is not appropriate because genuine disputes of fact exist as to the nature of Tamas' "primary duty."

15

### B. Good Faith and Willfulness

Under 29 U.S.C. § 255(a), the normal two-year statute of limitations applicable to FLSA claims is extended to three years upon a showing of willfulness. Moreover, when an employer is found by the trier of fact to have violated FLSA and the plaintiff is awarded compensatory damages, "the district court generally must add an award of liquidated damages in an equal amount." *Morgan*, 551 F.3d at 1282, citing 29 U.S.C. § 216(b); *Bankston v. State of Ill.*, 60 F.3d 1249, 1254 (7th Cir. 1995). The district court has discretion as to whether to award liquidated damages in whole or in part "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission" did not violate the FLSA. *Id.* (internal citations omitted). Family Video asks the Court to find on summary judgment that the shorter statute of limitations applies and that it acted in good faith so as to preclude Tamas from receiving liquidated damages if she prevails at trial.

The Court finds that a ruling as to either issue would be premature at this time. The issue of willfulness under FLSA is properly left to the jury. *See*, *e.g., Bankston*, 60 F.3d at 1253 ("It is the jury's province to decide which limitations period, two or three years, applies in light of the plaintiffs' evidence that the defendants acted willfully"); *Fuentes v. CAI Int'l, Inc.*, 728 F. Supp. 2d 1347, 1360 (S.D. Fla. 2010) ("Before the Court may entertain the defense of 'good faith,' the jury must determine whether the defendants violated the FLSA and whether such violation was willful . . . ."); *McGuire v. Hillsborough Cnty., Fl.*, 511 F. Supp. 2d 1211, 1218 (M.D. Fla. 2007) (summary judgment as to whether defendant willfully violated FLSA issue left for jury).

16

It also is premature to consider the issue of willfulness where, despite the Court's denial of Family Video's summary judgment motion, "there has been no finding that defendants violated the FLSA." *Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625, 2011 WL 10069108, at *30 (W.D. Wis. Apr. 11, 2011); *see also Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1323-24 (11th Cir. 2007) (ruling reserved until FLSA violation established); *Carlson v. C.H. Robinson Worldwide, Inc.*, Nos. 02-3780, 02-4261, 2005 WL 758601, at *15 (D. Minn. Mar. 30, 2005) ("under the FLSA, liability is a predicate to a willfulness analysis and to a finding of liquidated damages"); *Cooke v. General Dynamics Corp.*, 993 F. Supp. 56, 65-66 (D. Conn. Jun. 16, 1997) (determination of whether employer willfully violated FLSA premature where material issues of fact precluded summary determination of underlying issue of whether employees were covered by FLSA).

Because the Court finds that it is properly left to the jury to determine whether Family Video violated the FLSA or whether an exemption applied, the issue of willfulness should be left to the jury as well. To the extent the jury finds that Family Video has behaved willfully, the parties may address the issue of liquidated damages at the conclusion of the trial.

## Conclusion

For the reasons set forth above, Defendants' [Corrected] Motion for Summary Judgment [88] is denied.

**SO ORDERED**  ENTER:  3/28/13

_____
**JOHN Z. LEE**
**U.S. District Judge**

17