**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALINA TAMAS, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 11 C 1024 |
| v. | ) ) | Judge John Z. Lee |
| FAMILY VIDEO MOVIE CLUB, INC., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Alina Tamas ("Tamas") brings this putative class/collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. § 105/1 *et seq.*, against Defendant Family Video Movie Club, Inc. ("Family Video"). Tamas, a former salaried Store Manager and Manager-in-Training at Family Video, alleges that she and those who were similarly-situated were improperly classified as exempt employees and thus deprived of overtime pay. Tamas moves for conditional certification of the FLSA class and certification of the IMWL class. For the reasons set forth below, Tamas' motion is granted in part and denied in part.

**Background**

Tamas and those who are similarly-situated to her worked as salaried Store Managers ("SMs") and/or Managers-in-Training ("MITs") at Family Video stores throughout Illinois and the United States. (Compl. ¶ 1.) Tamas and the putative class members were regularly required to, and did, work more than 40 hours per week, but were not paid overtime for those additional hours. (*Id.* ¶¶ 2, 3.) Tamas alleges that Family Video misclassified them as exempt employees, despite the fact that they primarily performed non-managerial tasks. (*Id.* ¶ 4.) Family Video

denies that it classified all SMs and MITs as exempt, pointing out that some MITs were not salaried. (Dkt. 112 (Def.'s Resp.) at 6.) As a result, Tamas clarified her proposed class definitions as "only seeking a class of salaried MITs and SMs." (Dkt. 133 (Pl.'s Reply) at 2.)

Specifically, Tamas asserted in her deposition that she spent about 90 percent of her time each week as a salaried MIT performing non-managerial tasks such as stocking movies, taking inventory, and checking out customers. (Dkt. 69, Ex. 7 (Tamas Dep.) at 215-16.) Tamas also provided declarations from six other putative plaintiffs, all of whom were employed either as SMs or MITs at various stores throughout the United States (although none were located in Illinois).[1] (*Id.* at Ex. 8.) These declarations, like Tamas' testimony, uniformly assert that there was "virtually no difference in terms of job responsibility" in their stores between the salaried MITs and SMs, on the one hand, and hourly Customer Service Representatives on the other. (*Id.*, Ex. 8(a) ¶ 2; Ex. 8(b) ¶ 2; Ex. 8(c) ¶ 2; Ex. 8(d) ¶ 2; Ex. 8(e) ¶ 2; Ex. 8(f) ¶ 2.) Moreover, these declarants claim that, when they were salaried, they were required to work more than 44 hours in a week, but were not allowed to work more than 40 hours in a week when they previously had been hourly employees. (*Id.*, Ex. 8(a) ¶ 4; Ex. 8(b) ¶ 4; Ex. 8(c) ¶ 4; Ex. 8(d) ¶ 4; Ex. 8(e) ¶ 4; Ex. 8(f) ¶ 4..) They also assert that more than 90% of their time as salaried MITs involved "performing the same job duties that hourly [Assistant Store Managers] and hourly CSRs performed," and that their duties "were overwhelmingly manual tasks. . . ." (*Id.*, Ex. 8(a) ¶ 7; Ex. 8(b) ¶ 7; Ex. 8(c) ¶ 7; Ex. 8(d) ¶ 7; Ex. 8(e) ¶ 7; Ex. 8(f) ¶ 7.)

---

[1] The other declarants are Cammie Myers (former salaried and hourly MIT at various Family Video locations in Oklahoma) (Dkt. 69, Ex. 8(a)); Brenda Drumheller (former salaried and hourly MIT and SM at various Family Video locations in Michigan) (*Id.*, Ex. 8(b)); Karl Burns (former hourly MIT and salaried SM at various Family Video locations in Pennsylvania) (*Id.*, Ex. 8(c)); Anissa Rubenalt (former salaried MIT and SM at various Family Video locations in Ohio and Indiana) (*Id.*, Ex. 8(d)); Andrew Zigler (former MIT and SM at various Family Video locations in Indiana) (*Id.*, Ex. 8(e)); and Lori Dudderar (former salaried and hourly MIT and SM at various Family Video locations in Indiana, Ohio, and Michigan) (*Id.*, Ex. 8(f)).

To blunt the impact of Tamas' testimony and these additional declarations, Defendants provided counter-declarations from nineteen declarants, all current or former salaried MITs and SMs at Family Video.[2] (Dkts. 112-115, Exs. A-S.) These declarants all assert that their time spent as salaried MITs and/or SMs primarily involved the performance of managerial duties. (Dkt. 112 at 14-24, citing Exs. A-S.)

The Court previously denied Family Video's motion for summary judgment as to Tamas, finding that a genuine issue of material fact existed as to the nature and scope of the primary duties performed by Tamas at the Family Video stores. (Dkt. 155.) In doing so, the Court held that it was unable to determine whether the executive, administrative, or combination exemption applied to render Tamas exempt under the FLSA.[3] (*Id.*)

---

[2] Family Video's declarants are Samantha A. Alfaro (current salaried MIT and acting SM at various Family Video locations in Illinois) (Dkt. 112, Ex. A); Cheryl Bloom (former salaried and hourly MIT and current salaried SM at various Family Video locations in Iowa) (*Id.*, Ex. B); Jessica L. Brown (current salaried SM and former salaried and hourly MIT at various Family Video locations in Illinois) (*Id.*, Ex. C); Lauren Calederone (current salaried SM and former salaried and hourly MIT at various Family Video locations in Illinois) (*Id.*, Ex. D); Jason Casteel (current salaried SM and former salaried MIT at various Family Video locations in Illinois) (*Id.*, Ex. E); Natasha J. Cox (current salaried SM and former MIT at various Family Video locations in Ohio) (Dkt. 113, Ex. F): Aaron Coxson (current salaried SM and former salaried MIT at various Family Video locations in Ohio) (*Id.*, Ex. G); Jason Coyle (current salaried SM at various Family Video locations in Illinois and Wisconsin) (*Id.*, Ex. H); Katrina Duden (current salaried SM and former salaried and hourly MIT at various Family Video locations in Illinois and Wisconsin) (*Id.*, Ex. I); James M. Neice (current SM and former hourly and salaried MIT at various Family Video locations in Indiana) (*Id.*, Ex. J); Elisse Nibbelin (current salaried SM and former hourly and salaried MIT at various Family Video locations in Illinois, Oklahoma and Kentucky) (Dkt. 114, Ex. K); Anthony Nugeness (current salaried SM and former hourly and salaried MIT at various Family Video locations in Ohio) (*Id.*, Ex. L); Joshua Pohl (former SM and salaried MIT at various Family Video locations in Missouri) (*Id.*, Ex. M); Anna Saving (current SM and former hourly and salaried MIT at various Fmaily Video locations in Illinois and Missouri); (*Id.*, Ex. N); Erin Sommer (current SM and former salaried MIT at various Family Video locations in Illinois, North Carolina, and Missouri) (Dkt. 115, Ex. O); Adam Uhlbeck (current SM and formerly hourly and salaried MIT at various Family Video locations in Michigan) (*Id.*, Ex. P); Danny White (current SM and former hourly and salaried MIT at various Family Video locations in Illinois) (*Id.*, Ex. Q); Holly White (current SM and former salaried MIT at various Family Video locations in Illinois and Indiana) (*Id.*, Ex. R); and Garrett Youker (current SM and former salaried and hourly MIT at various Family Video locations in Iowa) (*Id.*, Ex. S).

[3] Family Video attempts to reargue its summary judgment motion in connection with class certification. The Court finds it neither appropriate nor necessary to revisit the merits of that decision in connection with this motion.

**Discussion**

Plaintiff seeks conditional certification of the FLSA class pursuant to 29 U.S.C. § 216(b) and certification of the IMWL class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). Plaintiff's motion is granted as to the FLSA class, but denied as to the IMWL class.

A.   **FLSA Class**

Pursuant to 29 U.S.C. § 216(b), a plaintiff may bring a collective FLSA action on behalf of themselves "and other employees similarly situated." In this Circuit, such actions typically proceed under a two-step process. *See*, *e.g.*, *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010) (Although "[n]either the FLSA nor the Seventh Circuit has set forth criteria for determining whether employees are 'similarly situated' . . . courts in this district and around the country have settled on a two-step procedure for dealing with collective actions under the FLSA.") (internal citations omitted); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 & n.2 (N.D. Ill. 2004) (In evaluating conditional certification of a FLSA class, "[t]he majority of courts have employed, or implicitly approved, a two-step *ad hoc* method.") (collecting cases). First, we assess whether the plaintiff can demonstrate that there are similarly-situated employees who may also be claimants. If the plaintiff can show that similarly-situated individuals exist, the Court will grant conditional approval of the collective action and will allow notice of the case to be sent to the similarly situated employees, who have the opportunity to opt in as plaintiffs. *See Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007). The standards for conditional approval are "lenient," *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008), and require only "a modest factual showing sufficient to demonstrate that [plaintiff] and potential class members were victims of a common policy or plan that violated the law." *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008) (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)).

Once an FLSA class is conditionally approved, notice of the FLSA claim is given to the class, and the putative class members are permitted to opt-in. In the meantime, the parties are given the opportunity to proceed with discovery. After the parties take additional discovery, the court proceeds to the second step in the process, which frequently involves a request from the plaintiff to certify the FLSA class or a request from the defendant to decertify the conditionally certified class. At this time, Plaintiff seeks conditional approval of the FLSA class, which Plaintiff defines as:

> All salaried Managers in Training and Store Managers who worked for Family Video Movie Club, Inc., at any time during the past three years.

In support of her motion, Tamas contends that Family Video's salaried MITs and SMs were, as a matter of corporate policy, treated as exempt employees, thereby rendering conditional certification appropriate. Family Video counters that certification is not appropriate because (1) a more stringent analysis than that typically employed in evaluating conditional certification should apply; (2) Tamas fails to identify a common policy that violated the FLSA; (3) Tamas is not similarly-situated to her class members; and (4) individualized inquiries are necessary. The Court disagrees.

First, the scheduling order in this case contemplates a two-step process and provides for a second stage of discovery in the event that the collective action is certified. (Dkt. 27.) "Courts refuse to skip the first step of the conditional certification inquiry where the parties' agreed schedule indicates that there will be two stages of discovery." *Babych v. Psychiatric Solutions, Inc.*, No. 09 C 8000, 2011 WL 5507374, at *3 (N.D. Ill. Nov. 9, 2011) (internal citations omitted). The Court discerns no basis for deviating from the two-step process originally proposed by the parties.

Second, Family Video contends that Tamas has failed to identify a common policy that violated the FLSA. But, according to Tamas, Family Video classified all salaried MITs and SMs as exempt, and this is undisputed by the parties. Although this may not be sufficient for certification of the FLSA class once all discovery concludes, Tamas' argument is sufficient to warrant conditional certification under the FLSA. *See Salmans v. Byron Udell & Assocs., Inc.*, No. 12C3452, 2013 WL 707992, at *5 (N.D. Ill. Feb. 26, 2013) (challenging corporate policy of designating all Account Executives as exempt sufficient to meet conditional certification requirement) (citing *Betancourt v. Maxim Healthcare Servs., Inc.*, No. 10 C 4763, 2011 WL 1548964, at *4 (N.D. Ill. Apr. 21, 2011), and *Collazo v. Forefront Educ., Inc.*, No. 08-5987, 2010 WL 335327, at *3 (N.D. Ill. Jan. 28, 2010)).

Third, at present, Tamas has met her burden of making a "modest factual showing" that there are similarly-situated employees who are potential plaintiffs. *Russell*, 575 F. Supp. 2d at 933. This burden is met where, as here, the claimants provide evidence that they were subject to the same policy that misclassified them as exempt employees. *See*, *e.g.*, *Salmans*, 2013 WL 707992, at *5 ("All that is necessary at this stage is for the plaintiffs to establish that the class was subject to a common policy that *allegedly* violates the overtime provisions of the FLSA, which they have done.") (citing *Betancourt*, 2011 WL 1548964, at *4, and *Collazo*, 2010 WL 335327, at *3); *see also Petersen v. Marsh USA, Inc.*, No. 10 C 1506, 2010 WL 5423734, at **4-5 (N.D. Ill. Dec. 23, 2010) (class conditionally certified where all members had same job title); *Olmsted v. Residential Plus Mtg. Corp.*, Nos. 08 C 142, 08 C 419, 2008 WL 5157973, at *3 (N.D. Ill. Dec. 9, 2008) (class conditionally certified where plaintiff cited policy of routinely misclassifying employees). And, as explained in *Smallwood v. Illinois Bell Telephone Co.*, it is not until the conclusion of the opt-in process and class discovery "that the court more rigorously

reviews whether the representative plaintiff and the putative claimants are in fact similarly situated so that the lawsuit may proceed as a collective action." 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010) (internal citations omitted).

Fourth, for the same reasons, the Court cannot at this stage of the litigation adopt Family Video's argument that individualized inquiries are necessary to determine whether each putative member was properly classified as exempt. Again, although this argument may have merit, it is appropriately made at the second stage of the FLSA class certification inquiry. *See*, *e.g.*, *Allen v. City of Chi.*, No. 10 C 3183, 2013 WL 146389, at *8 (N.D. Ill. Jan. 14, 2013); *Brand v. Comcast Corp.*, No. 12 CV 1122, 2012 WL 4482124, at *6 (N.D. Ill. Sept. 26, 2012); *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2012 WL 580775, at *4 (N.D. Ill. Feb. 22, 2012); *Perez v. Comcast*, No. 10 C 1127, 2011 WL 5979769, at *2 (N.D. Ill. Nov. 29, 2011).

Accordingly, the Court finds that Tamas has met her burden of demonstrating that Family Video treated all salaried MITs and SMs as exempt employees to a sufficient degree to merit conditional certification under the FLSA. At a later juncture, Family Video may ask this Court to reevaluate certification, as is their right. *See*, *e.g.*, *Russell*, 575 F. Supp. 2d at 933. But conditional certification of the FLSA class as defined by Plaintiff is appropriate.

### B. IMWL Class

Plaintiff defines the proposed IMWL wage law class as:

All salaried Managers in Training and Store Managers who worked for Family Video Movie Club, Inc. in Illinois at any time from February 14, 2008, to the present.

Plaintiff seeks certification of this class under Rule 23 and hence must satisfy the requirements of Rule 23(a) and (b). To be certified under Rule 23(a), Plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions

of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Once Plaintiff satisfies the elements of Rule 23(a), she must also establish that the proposed class falls within one of the three enumerated categories of Rule 23(b): "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because the risk that the class action adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests); (2) an action seeking final injunctive or declaratory relief; or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. The Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011). Here, Tamas proceeds under Rule 23(b)(3).

Although Tamas satisfies the elements of Rule 23(a), she fails to satisfy by a preponderance of the evidence the predominance element of Rule 23(b)(3). Therefore, Tamas' motion to certify the IMWL class is denied.

### 1. Numerosity

Rule 23(a)(1) is satisfied where "the class is so numerous that joinder of all members is impracticable." Tamas asserts that Family Video has employed more than 100 salaried MITs and SMs in Illinois since February 14, 2008. Tamas bases this argument on the fact that the Family Video website identifies 115 Family Video stores in Illinois alone, and that even if each store had only one salaried SM and/or MIT during the relevant period of time, that would be sufficient to satisfy the numerosity requirement. Such "'common sense assumptions can be made in order to support a finding of numerosity.'" *Barragan v. Evanger's Dog & Cat Food Co., Inc.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009) (quoting *Grossman v. Waste Mgmt., Inc.*, 100

F.R.D. 781, 785 (N.D. Ill. 1984)). With more than 115 individual stores in Illinois, it is reasonable to believe that the number of salaried SMs and MITs employed by Family Video will certainly exceed 40, satisfying the numerosity requirement. *See*, *e.g.*, *Chavez v. Don Stoltzner Mason Contractor, Inc.*, 272 F.R.D. 450, 454 (N.D. Ill. 2011) (numerosity requirements satisfied with more than 40 employees); *Barragan*, 259 F.R.D. at 333 (same); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996) (class certified with 18 members).

### 2. Commonality

The second Rule 23 element, commonality, requires Plaintiff to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). But, as the Supreme Court recently clarified in *Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S. Ct. 2541, 2551 (2011) (quoting *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 (1982)), "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Here, plaintiff contends that the common injury requirement is satisfied because the putative class members were improperly classified as exempt employees and denied overtime pay as a result of a uniform and company-wide practice. As Tamas notes, this Court previously has found commonality to exist in similar misclassification cases. *See*, *e.g.*, *Smallwood*, 710 F. Supp. 2d at 752 (commonality present where "common policy or plan appeared to exist" where defendant "uniformly reclassified" all OSP Engineers as non-exempt); *Jirak*, 566 F. Supp. 2d at 848-49 (common policy of classifying pharmaceutical representatives as exempt).

Recently, in *Vang v. Kohler Co.*, 488 Fed. Appx. 146, 147 (7th Cir. 2012), the Seventh Circuit again confirmed that the existence of a "single, firm-wide policy . . . could satisfy Rule

23(a)(2)." In reaching this holding, Judge Easterbrook relied upon the Seventh Circuit's decision in *Ross v. RBS Citizens, N.A.*, 667 F.3d 900 (7th Cir. 2012), which was issued after the Supreme Court decided the *Dukes* case.[4]

In *Ross*, which involved allegations under the FLSA similar to those at issue here, the defendant argued that certification should be denied under the commonality analysis in *Dukes*. The Seventh Circuit disagreed, distinguishing *Dukes* on the grounds that (1) *Dukes* featured a particularly large putative class, and (2) the sex discrimination claims at issue in *Dukes* required plaintiffs to demonstrate discriminatory motive or intent as to each plaintiff, thereby necessitating individualized inquiries of liability. *Ross*, 667 F.3d at 909 (*citing Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176(RMB), 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011) (distinguishing *Dukes* because New York FLSA does not require individualized inquiries)); *Bounaphakeo v. Tyson Foods, Inc.*, No. 5:07-cv-04009-JAJ, 2011 WL 3793962, at *2 (N.D. Iowa Aug. 25, 2011) (distinguishing *Dukes* where Title VII necessarily required individualized inquiries into reason for each employment decision). According to the Seventh Circuit, the defendant in *Ross* had an "unofficial policy" of not paying overtime for assistant managers and this satisfied the commonality element. "[T]he glue holding together the . . . [Assistant Branch Manager] class[] is based on the common question of whether an unlawful overtime policy prevented employees from collecting lawfully earned overtime compensation." *Ross*, 667 F.3d at 910.

*Ross* has now come under scrutiny in light of the Supreme Court's recent decision in *Comcast Corp. v. Behrend*, -- U.S. --, 133 S. Ct. 1426 (2013). In *Comcast*, an antitrust class

---

[4]    *Dukes* involved a 1.5 million member class action filed by female Wal-Mart employees who alleged that Wal-Mart improperly discriminated against them based upon their gender in violation of Title VII of the Civil Rights Act of 1964. 131 S. Ct. at 2547. The Supreme Court decertified the *Dukes* class because the plaintiffs could not prove that there was a uniform policy of discrimination based upon gender that would encompass "literally millions of employment decisions." *Id.* at 2552.

action, the Supreme Court held that the plaintiffs' expert could not demonstrate that damages could be measured on a classwide basis, thereby falling short of Rule 23(b)(3)'s predominance requirement. *Id.* at 1432-33. Without such evidence, the Court held, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.* at 1433. The Supreme Court subsequently issued a "grant/vacate remand order" ("GVR") expressly directing the Seventh Circuit to reconsider *Ross* in light of *Comcast*.

Since that time, the parties in *Ross* have settled their dispute, and the Seventh Circuit stayed the appeal. Be that as it may, GVRs are not orders vacating decisions, nor do they "indicate, nor even suggest, that the lower court's decision was erroneous." *Communities for Equity v. Michigan High School Athletic Ass'n*, 459 F.3d 676, 680 (6th Cir. 2006); *see also Gonzalez v. Justices of the Municipal Court of Boston*, 420 F.3d 5, 7-8 (1st Cir. 2005) ("a GVR order is neither an outright reversal nor an invitation to reverse; it is merely a device that allows a lower court that had rendered its decision without the benefit of an intervening clarification to have an opportunity to reconsider that decision and, if warranted, to revise or correct it . . . ."); *U.S. v. Norman*, 427 F.3d 537, 538 n.1 (8th Cir. 2005) (GVR "not the equivalent of a reversal on the merits . . . ."). Although the weight of *Ross* may be in doubt, it remains precedential authority for the time being.

In its supplemental filing, Family Video insists that the Supreme Court's GVR order "made it clear that Plaintiffs bear the burden of showing a reliable method of calculating damages on a classwide basis not only to establish Rule 23(b)(3) predominance – but first to establish Rule 23(a) commonality in order to comply with *Dukes*." (Dkt. 160.) This argument is an overreach. Had the Supreme Court feared that the Seventh Circuit had misapplied *Dukes* in the *Ross* case, it certainly could have indicated as such on the GVR order. And, in any event, the

11

Seventh Circuit's analysis as to commonality – should it be necessary to reconsider *Ross* –would not necessarily be impacted by the predominance analysis in *Comcast*. *See Boehner v. McDermott*, 332 F. Supp. 2d 149, 156 (D.D.C. 2004) (quoting *U.S. v. M.C.C. of Fla., Inc.*, 967 F.2d 1559, 1562 (11th Cir. 1992) (while a GVR order normally renders the opinion without precedential force, where, as here, the GVR order "was not a general vacation but rather a specific order vacating the Court of Appeals' judgment and remanding for further consideration in light of the Supreme Court's decision in" *Comcast*, the GVR order "'is of a much more limited nature' than a general vacation.").

In the present case, the parties have presented conflicting evidence as to whether Family Video has an official policy of treating all salaried SMs and MITs as exempt employees, while simultaneously requiring them to perform tasks that are fundamentally indistinguishable from those performed by the non-exempt employees working at Family Video. On the one hand, Family Video utilized the following job descriptions that appeared in the employee handbook, known as the "Family Video S.T.A.R. Binder:"

> **MANAGER-IN-TRAINING DEFINED**
>
> The Manager-In-Training is trained to perform all functions of the Store Manager but is subordinate to the Store Manager until called to fill a Store Manager vacancy. The MIT is one of the prime Customer Service Representatives in the store and an example to other Customer Service Representatives. The MIT helps the Manager to see that all policies and procedures are followed and performs retail management functions.

**STORE MANAGER DEFINED**

> The Store Manager handles the day-to-day organization of running the store and focuses on customer service, leadership and staff development, employee morale and store security. The store manager has the responsibility of creating and maintaining a fun and friendly atmosphere in the store. The manager will train and evaluate staff on all aspects of their jobs and coach MIT's and assistant managers to develop their leadership talents. The store manager leads by example through hard work, organization, handling problems quickly and fairly and by treating all employees with respect. The Store Manager also schedules staff to most efficiently fulfill our customer service requirements and delegates to fulfill the store's operational needs.

(Pl.'s Mot. Ex. 5.) As drafted, these descriptions describe the salaried SM and MIT positions as having primarily managerial duties.

On the other hand, Tamas has put forth evidence that all salaried SMs and MITs were required to perform non-managerial tasks. For example, all salaried SMs and MITs, as well as all non-exempt customer service representatives, were required to follow the uniform policies set forth in "Star Binder." The handbook included routine daily operating procedures that were standard for all stores, including an eighteen-page section outlining facilities management standard procedures, which required all employees, salaried or not, to perform janitorial tasks to maintain their stores as necessary. Moreover, as Tamas testified, all Family Video stores followed a list of tasks set forth on the daily "tickler" list, which contained all tasks that were required to be performed at each Family Video store, such as issuing late movie reminders, checking out customers, renting and receiving movies, stocking shelves, and conducting inventory. (Dkt. 69, Ex. 7 (Tamas Dep.) at 214.) The Court finds that Family Video's comprehensive employee handbook, the daily tickler checklist, and its consistent policy of classifying all salaried SMs and MITs as exempt, taken together, constitute sufficient evidence of

an overarching corporate policy sufficient to meet Tamas' burden to establish commonality under Rule 23(a)(2).

### 3. Typicality

"The question of typicality in Rule 23(a)(3) is closely related to the . . . question of commonality." *Rosario*, 963 F.2d at 1018; *see also Barragan*, 259 F.R.D. at 334 (same). Claims are found to be typical where they arise from "the same event, practice or course of action" as the other plaintiffs' claims, and they are based on the same legal theory. *Barragan*, 259 F.R.D. at 334 (citing *Rosario*, 963 F.2d at 1018); *see also* Chavez, 272 F.R.D. at 455. Here, the same harm is alleged – that Family Video wrongfully classified salaried SMs and MITs as exempt in violation of the IMWL. *Id.* Thus, there is sufficient typicality among the Plaintiffs' claims to satisfy Fed. R. Civ. P. 23(a)(3).

### 4. Adequate Representation

Tamas argues that she and her counsel will adequately represent the class, as required by Fed. R. Civ. P. 23(a)(4). Tamas asserts that her overtime claims are identical to the rest of the class, she shares the same interests as the rest of the class, and she has demonstrated her commitment to the litigation by responding to discovery and providing her deposition. Her attorneys attest that they are qualified to represent class action plaintiffs and have been determined to provide adequate representation in other cases. *See Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 WL 1774091, at *6 (N.D. Ill. Dec. 1, 2000). Family Video does not counter either of these arguments in its response brief, apparently conceding that the requirements of Rule 23(a)(4) are satisfied. The Court concludes that because Tamas has been an active participant in the litigation to date and because her attorneys have a lengthy track record of representing class action plaintiffs, she has met her burden under Rule 23(a)(4).

### 5. Predominance

Even though Tamas has satisfied the elements of Rule 23(a), the Court finds that her motion fails to meet the more stringent requirement of predominance under Rule 23(b)(3), because individual questions of liability predominate over common ones.

Pursuant to Fed. R. Civ. P. 23(b)(3), a plaintiff must establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." This is a "far more demanding" analysis than the commonality analysis of Rule 23(a)(2). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). As such, a court must "identify [ ] the substantive issues that will control the outcome, assess[ ] which issues will predominate, and then determin[e] whether the issues are common to the class." *Chavez*, 272 F.R.D. at 455 (internal quotations omitted). Most recently, in *Comcast*, the Supreme Court emphasized that in conducting a predominance analysis, courts must be cautious not to allow individual questions to "overwhelm" the common ones. 133 S. Ct. at 1433. Here, Family Video contends that individualized inquiries will be necessary to determine "whether each putative member – at each remote store – was performing duties sufficient to qualify as an exempt employee . . . ." (Def.'s Resp. 27-28.) Tamas replies that common issues predominate, because in this misclassification case, "the test turns on the balance of common to individual issues." (Pl.'s Reply 19.)

In advancing her argument, however, Tamas relies largely upon non-binding authority from outside of this Circuit. In fact, the only Seventh Circuit case Tamas cites in support of her predominance argument is *Messner v. NorthShore Univ. Health Sys.*, 669 F.3d 802 (7th Cir. 2012). In *Messner*, an antitrust class action case, the Seventh Circuit found that the putative class met its burden as to predominance under Rule 23(b)(3) because the plaintiff's expert could

utilize common evidence and a common methodology to establish antitrust impact. But *Messner* is not persuasive here. As the Seventh Circuit concluded in *Messner*, all of the analyses required to establish antitrust damages "rel[ied] on common evidence," and "[t]he ability to use such common evidence and common methodology to prove a class's claims [was] sufficient to support a finding of predominance . . . under Rule 23(b)(3)." 669 F.3d at 819. The opposite is true in this case, because there are individualized questions as to liability that preclude the Court from finding that common issues predominate.

Here, the crux of the dispute is whether the "primary duties" required of the salaried SMs and MITs were managerial, not whether Family Video had a common policy of denying overtime to SMs and MITs. The parties have presented an array of disparate facts as to this issue, the resolution of which will ineluctably require individualized inquiries into the duties that each member of the proposed class actually performed. Such differences potentially exist at the state, regional, and local levels. Thus, even if Tamas can show that the majority of the tasks that *she* performed were non-managerial in nature, her experience may vastly differ from that of a salaried SM or MIT at another store in Illinois.[5]

The declarations submitted by Tamas shed no light on this problem. Although Tamas submits six declarations from other salaried SMs and/or MITs in support of her motion (all averring that their duties were primarily non-managerial), none of the declarants worked in

---

[5] The Court recently addressed this issue in another case filed by Family Video's hourly employees. *See Smith v. Family Video Movie Club, Inc.*, No. 11 CV 1773, 2013 WL 1628176, at *11 (N.D. Ill. Apr. 15, 2013). There, the Court denied the plaintiffs' motion to certify their IMWL class on predominance grounds, explaining that because the tasks performed and hours worked were "location and manager-dependent," the plaintiffs could not demonstrate that "common issues *predominate[d]* the individualized inquiries that would be necessary" as to liability. *Id.* (emphasis in original) (citing *Strait v. Belcan Eng'g Grp., Inc.*, No. 11 C 11306, 2012 WL 5988877, at *17 (N.D. Ill. Nov. 29, 2012); *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 354-55 (N.D. Ill. 2012); *Franks v. MKM Oil, Inc.*, No. 10 CV 00013, 2012 WL 3903782, at *6 (N.D. Ill. Sept. 7, 2012); and *Doyel v. McDonald's Corp.*, No. 08 C 1198, 2010 WL 3199685, at *4 (E.D. Mo. Aug. 12, 2010)).

Family Video stores located in Illinois. By contrast, Family Video tenders nineteen declarations from other Family Video salaried SMs and/or MITs (eleven of whom worked at Illinois stores) that state the opposite, further underscoring the need for individual inquiries. For example, Tamas testified at her deposition that the vast majority of the tasks she performed on a daily basis were menial tasks such as checking in and out movies, taking inventory, and stocking shelves. (Dkt. 69, Ex. 7 (Tamas Dep.) at 215-16.) Family Video's Illinois-based declarants, however, all averred that their "primary duties" at their stores were managerial, such as supervising employees, growing revenue, and managing costs. (Dkt. 112, Ex. A ¶ 9, Ex. C ¶ 10, Ex. D ¶ 8, Ex. E ¶ 8; Dkt. 113, Ex. H ¶ 7, Ex. I ¶ 10; Dkt. 114, Ex. K ¶ 10, Ex. N ¶ 9; Dkt. 115, Ex. O ¶ 10, Ex. Q ¶ 8, Ex. R ¶ 10.) Tamas further testified that the other employees that worked with her "pretty much functioned on their own," and that she "didn't really have to direct them." (Dkt. 69, Ex. 7 at 125-26.) But Family Video's declarants claim that they supervised numerous employees at their store locations. (Dkt. 112, Ex. A ¶ 7, Ex. C ¶ 7, Ex. D ¶ 7, Ex. E ¶ 7; Dkt. 113, Ex. H ¶ 6, Ex. I ¶ 8; Dkt. 114, Ex. K ¶ 8, Ex. N ¶ 7; Dkt. 115, Ex. O ¶ 8, Ex. Q ¶ 7, Ex. R ¶ 8.)

Because the Family Video declarants have not been deposed, it is impossible to know at this stage whether they also engaged in non-managerial tasks similar to those that Tamas asserted took up the bulk of her time. And, although Tamas' declarants are not from Illinois, their testimony provides no basis for the Court to find that all salaried SMs and MITs *in Illinois* performed substantially the same (non-managerial) tasks as would be necessary to satisfy the

predominance requirement for the purported IMWL class. The Court thus finds that the need for individualized liability assessments precludes a finding of predominance.[6]

As Tamas fails to meet her burden as to predominance, the Court need not address the final Rule 23(b) factor (superiority) in denying her request to certify an IMWL class.

### Conclusion

Plaintiff's Motion for Notice to Potential Class Members [69] is granted in part and denied in part. The following FLSA class is conditionally certified for the purposes of notice and discovery: "All salaried Managers in Training and Store Managers who worked for Family Video Movie Club, Inc. at any time during the past three years." Judicial notice to the FLSA class in the form proposed by Plaintiff shall be sent to all putative class members as set forth in the schedule proposed by Plaintiff. (Dkt. 69 at 25.) Family Video is directed to provide Plaintiff's Counsel with the contact information for each putative collective class member within fourteen days from the date of this Order. Plaintiff's Motion for Notice to Potential Class Members is denied as to her proposed IMWL class.

**SO ORDERED**            **ENTER: 8/13/13**

_____
**JOHN Z. LEE**
**U.S. District Judge**

---

[6] Because the issue involves one of liability rather than damages, Tamas' request in her supplemental filing that the Court certify an IMWL class for liability purposes only and allow additional discovery as to damages will not remedy the core problems with respect to predominance.